Hon. Alexander F. Treadwell Formal Opinion No. 99-F3 Secretary of State State of New York Department of State 41 State Street Albany, New York 12231-0001
Dear Secretary Treadwell:
Your counsel has asked whether you may make a loan to a municipality or fire district from the State emergency services revolving loan account pursuant to State Finance Law § 97-pp when it appears from the loan application that the loaned funds will be used by a private not-for-profit fire company or ambulance service to purchase emergency equipment. Your counsel states that this situation arises when a municipality or fire district contracts with a fire company or ambulance service to provide services to residents of the municipality or district. The municipality or fire district would apply for a loan from the emergency services revolving loan account and transfer the loaned funds to the fire company or ambulance service, which would purchase the equipment using the loan proceeds combined with its own money. The fire company or ambulance service would hold title to the equipment and make regular payments to the municipality or fire district to enable it to repay the loan. In effect, your counsel states, the municipality or fire district would apply for the loan as a "surrogate" for the not-for-profit corporation.
We conclude that the transaction your counsel has described is not authorized under State Finance Law § 97-pp. The plain language of the statute demonstrates that the Legislature intended loans from the emergency services revolving loan account to be made to municipalities and fire districts for purchase of emergency equipment by and in the name of these entities. Transfer of borrowed funds to a not-for-profit corporation for its independent use was not contemplated. As we describe more fully below, however, a significant part of funds loaned annually to applicants from the emergency services loan account is dedicated for purchase of emergency equipment by municipalities and fire districts for use of such equipment by volunteer fire companies and volunteer ambulance services.
State Finance Law § 97-pp(1) establishes the emergency services revolving loan account in the custody of the State Comptroller. It provides that loan applications may be made by "a town, village, city, fire district or county, other than a county wholly contained within a city, provided that the application is otherwise consistent with its respective powers." Id., § 97-pp(5)(a). Thus, only the listed municipalities and fire districts may apply for loans; not-for-profit corporations may not apply.
The Assembly Memorandum in Support of the bill that created section 97-pp summarized its provisions as follows: "to establish a fund from which the Secretary of State may make loans to cities, villages, fire districts, counties and towns to acquire, upgrade and improve eligible facilities, apparatus and equipment." Bill Jacket, L 1994, ch 599.
The Secretary of State, on the recommendation of the emergency services loan board, may make loans from the emergency services loan account "upon application duly made" for the following specific purposes:
(i) Purchasing fire fighting apparatus . . .
(ii) Purchasing ambulances or rescue vehicles . . .
 (iii) Purchasing protective equipment or communication equipment . . .
 (iv) Repairing or rehabilitating fire fighting apparatus, ambulances or rescue vehicles . . .
(v) Purchasing accessory equipment . . .
 (vi) Renovating, rehabilitating or repairing facilities that house firefighting equipment, ambulances, rescue vehicles and related equipment . . .
 (vii) Construction costs associated with the establishment of facilities that house firefighting equipment, ambulances, rescue vehicles and related equipment . . .
(hereafter "emergency equipment"). State Finance Law § 97-pp
(4)(a). Because loans may be made only to municipalities and fire districts (applicants) for the specified purposes, it follows that once a loan is approved, the applicant may use the proceeds only to purchase the emergency equipment listed in its approved application.
Section 97-pp also provides that "[e]very application shall accurately reflect the conditions which give rise to the proposed expenditure and accurately reflect the ability of the applicant to make such an expenditure without" a loan. Id., § 97-pp(5)(b) (emphasis supplied). This provision suggests that the Legislature intended the applicant (municipality or fire district), and not other entities, to expend loan funds to pay for emergency equipment.
Similarly, the statute provides that the Secretary of State may require security for any loan and may specify the priority of liens against any emergency equipment wholly or partially purchased with loaned funds.Id., § 97-pp(4)(b). This provision is consistent with the statutory intent that only a municipality or fire district may use loan funds to purchase and hold title to emergency equipment. The obvious purpose of this provision, to protect the integrity of the revolving loan account, would be jeopardized if municipalities and fire districts were permitted to transfer borrowed funds to third parties who would then purchase and hold title to emergency equipment.
We note that incorporated and other fire companies and ambulance services, in providing fire protection and emergency services to fire districts or municipalities, can use emergency equipment purchased by the municipalities or fire districts with loaned funds. Further, the statute requires that at least 50 percent of annual loans made by the Secretary of State be made to applicants whose fire protection or ambulance service is provided by an exclusively volunteer fire department or ambulance service whose budget for the preceding fiscal year did not exceed $100,000. State Finance Law § 97-pp(5)(c)(ii).
Chapter 599 of the Laws of 1994, which enacted State Finance Law §97-pp, also amended Town Law § 184(1) and County Law § 225-a(5). Prior to its amendment, section 184(1) of the Town Law required a town board to provide for the furnishing of fire protection within a fire protection district when it established or extended the district. For that purpose, the town board was permitted to contract with a city, village, fire district or incorporated fire company. Chapter 599 amended this provision by adding that the town
 may acquire by gift or purchase such apparatus and appliances for use in such district and may contract with any city, village, fire district or incorporated fire company for operation, maintenance, and repair of the same and for the furnishing of fire protection in such district, or both.
County Law § 225-a was amended to add a new subdivision 5, which states:
 Where, pursuant to section one hundred eighty-four of the town law, a town has contracted with an incorporated fire company to furnish fire protection within a fire protection district, the respective county may acquire by gift or purchase suitable apparatus and appliances for use in such district and in conjunction with the county mutual aid program and may contract with said incorporated fire company for operation, maintenance, and repair of same and for the furnishing of fire protection in such district.
Significantly, these provisions authorize towns and counties to contract with incorporated fire companies to operate, maintain and repair town- and county-owned apparatus and appliances for provision of fire protection in a fire protection district formed by a town. Thus, funds loaned by the Secretary of State may be used by town and county applicants to purchase emergency equipment for use by incorporated fire companies under contract to provide fire protection in a fire protection district.
We conclude that the transaction your counsel has described, in which a municipality or fire district would apply for a loan from the emergency services revolving loan account as a "surrogate" for a private fire company or ambulance service, is not authorized under State Finance Law § 97-pp. Because we conclude that there is no authority for the proposed transaction, we need not address the remaining questions raised by your counsel.
Very truly yours,
ELIOT SPITZER, Attorney General